UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
   MICHAEL MAGNAN,

                                Plaintiff,

               - against -

   JOSEPH NOETH, Superintendent, Attica
   Correctional Facility,

                              Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

20-cv-6160 (BMC)

**COGAN**, District Judge.

      Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 from his state court convictions, after a jury trial, for second degree felony murder (N.Y. Penal Law § 125.25(3)); first degree manslaughter (N.Y. Penal Law § 125.20(1)); attempted first degree robbery (N.Y. Penal Law §§ 110.00, 160.15(2)); and second degree menacing (N.Y. Penal Law § 120.14(1)). Additional facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, there were three incidents occurring within minutes of each other that gave rise to the charges of which petitioner was convicted. First, petitioner caused a ruckus at a nightclub, hitting one patron, stealing jewelry from another, and threatening to "shoot the place up" if anyone tried to stop him. Second, about ten minutes later, petitioner approached a car stopped at a red light and banged on the window with a handgun; the car then drove away. Third, promptly thereafter, petitioner attempted to rob a taxicab with two passengers in it. The driver punched petitioner and drove away, and petitioner fired his handgun at the fleeing cab, killing one of the passengers. Responding to the incidents, police arrested petitioner and found

the handgun used in the shooting (confirmed by ballistics) a few blocks away. Petitioner's DNA was on the handgun in multiple locations.

Petitioner raises two points of error: (1) at a pretrial hearing, the court erred in ruling that if petitioner took the stand at trial, he could be questioned about his membership in the Crips gang; (2) petitioner received ineffective assistance of trial counsel because trial counsel argued intoxication to the jury where trial counsel also argued identification and knew that the trial court had declined to give an intoxication instruction. The first point of error is not cognizable on federal habeas corpus review, and the second does not meet the standard for relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. The petition is therefore denied.

I. **The Sandoval Claim**

At pretrial hearings, petitioner sought to preclude the prosecution from introducing certain evidence showing that on the same night as the charged conduct, he had attempted to punch people and had committed another attempted robbery at a nightclub (the "other crimes evidence"). In addition, petitioner sought, if he chose to testify in his own defense at trial, to preclude the prosecution from questioning him about (1) two fights in which he was involved while in custody at Rikers Island and (2) his membership in the Crips gang.

The court allowed the other crimes evidence, and it ruled that if petitioner chose to testify at trial, the prosecution could not question petitioner about the Rikers Island incidents but could question petitioner about his membership in the Crips gang ("the Sandoval ruling").[1] The court stated: "[I]f he were to take the stand in this case . . . the People would have the right to make

---

[1] Under People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849 (1974), a court may determine at a pretrial hearing whether the prosecution may question the defendant regarding prior convictions or bad acts should the defendant testify at trial. See, e.g., Cherry v. New York, No. 18-cv-6493L, 2021 WL 710954, at *7 (W.D.N.Y. Feb. 24, 2021).

inquiry regarding his association or being a member of this gang, the Crips, which has a reputation for violence. It's the Court's opinion that the right to make inquiry is probative and it outweighs any prejudice to the defendant." Petitioner chose not to take the stand at trial.

On direct appeal, petitioner argued, *inter alia*, that the hearing court's Sandoval ruling deprived him of his due process rights to a fair trial and to present a defense. The Appellate Division rejected this claim on the merits, holding that "the ruling did not deprive the defendant of a fair trial, and any other error was harmless since the proof of the defendant's guilt was overwhelming and there was no reasonable possibility that the jury would have acquitted him had the error not occurred." People v Magnan, 173 A.D.3d 1214, 1215, 104 N.Y.S.3d 158, 160 (2nd Dep't), leave to app. denied, 34 N.Y.3d 952, 110 N.Y.S.3d 656 (2019).

In the instant habeas corpus proceeding, the Sandoval ruling is the only pretrial ruling as to which petitioner seeks review. However, because he chose not to testify at trial, review is unavailable in this Court. In Luce v. United States, 469 U.S. 38, 43 (1984), the Supreme Court held that "a defendant must testify" to "raise and preserve for review the claim of improper impeachment with a prior conviction." A reviewing court "cannot assume that the adverse ruling motivated a defendant's decision not to testify," the Court explained, for "an accused's decision whether to testify seldom turns on the resolution of one factor." Id. at 42 (citation and internal quotation marks omitted). Accordingly, when a defendant does not testify, any harm flowing from the pretrial ruling is "wholly speculative," and harmless error review becomes impossible. Id. at 41.

Although Luce involved direct review of a federal district court's interpretation of the federal rules of evidence, courts have extended Luce's holding to other contexts, including habeas review. See Mercado v. Phillips, No. 04-cv-2204, 2011 WL 1157617, at *6 (S.D.N.Y.

3

Feb. 22, 2011) (collecting cases), report and recommendation adopted, 2011 WL 1157570 (S.D.N.Y. March 29, 2011). Indeed, district courts in the Second Circuit have followed "a bright-line rule . . . barring habeas relief for allegedly erroneous Sandoval rulings in instances where a defendant elects not [to] testify." Shannon v. Senkowski, No. 00-cv-2865, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000). Many of these cases involved use of a prior conviction for impeachment, but the rule also applies to "cross-examination pertaining to prior criminal cond[u]ct for which no conviction was obtained." Mercado, 2011 WL 1157617, at *6 (addressing cross-examination about the circumstances of a prior arrest); cf. United States v. Maye, 649 F. App'x 15, 16–17 (2d Cir. 2016) (summary order) (holding on direct review that by failing to testify, the defendant waived any challenges to the district court's failure to definitively rule prior to trial as to the admissibility of impeachment evidence were the defendant to testify).

    I thus conclude that, because petitioner did not testify, Luce bars habeas review of the Sandoval ruling allowing the prosecution to cross-examine petitioner about his gang affiliation were he to testify at trial. Just as in a case involving impeachment with a prior conviction, I cannot assume that the state court's Sandoval ruling motivated petitioner's decision not to testify.

    This is particularly true considering that there was a mountain of evidence against him upon which he could have been cross-examined had he testified. Two eyewitnesses identified petitioner as the assailant. Two other eyewitnesses gave descriptions that matched petitioner. Petitioner's DNA was on the murder weapon. Police found the murder weapon on the path that petitioner took after fleeing from the scene. Petitioner ran from the police just after the shooting. Police found a shell casing fired from the gun near petitioner at the police station after his arrest. Surveillance video and witness testimony recorded a person who appeared to be petitioner attempting to rob and threatening to shoot people just before the murder. This occurred three

blocks away from the shooting. In short, cross-examination about gang membership had he testified would have been the least of petitioner's problems. Any harm flowing from the trial court's Sandoval ruling is therefore wholly speculative.

Petitioner's reliance on New Jersey v. Portash, 440 U.S. 450 (1979), is misplaced. There, the Supreme Court held that a state trial court violated a defendant's Fifth Amendment rights, even though the defendant did not testify, where the defendant had previously testified before a grand jury under a promise of legislative immunity and the trial court ruled that a prosecutor could use the grand jury testimony for impeachment if the defendant's trial testimony was materially inconsistent with the grand jury testimony. As petitioner notes, the Supreme Court held that the defendant's failure to testify did not make the Fifth Amendment issue "abstract or hypothetical." Id. at 454. But the Court addressed a different question than the one petitioner identifies. In holding that the issue was not hypothetical, the Supreme Court stressed that the state courts had addressed a constitutional question – namely, both decided whether the use of the grand jury testimony violated the defendant's Fifth Amendment rights. In short, the Portash majority saw the issue as "whether the federal issue properly was presented in the state courts." Id. at 465 (Blackmun, J., dissenting). Only the dissent framed the issue differently, asking "whether, in light of [the defendant's] failure to testify, the alleged claim is too remote and speculative to support jurisdiction." Id.

Luce squarely addressed that issue – and it adopted the Portash dissenters' view. The Court distinguished Portash, stating: "In th[at] case[] we reviewed Fifth Amendment challenges to state-court rulings that operated to dissuade defendants from testifying. We did not hold that a federal court's preliminary ruling on a question not reaching constitutional dimensions . . . is reviewable on appeal." 469 U.S. at 42–43. Here, too, petitioner seeks review of a state court's

5

preliminary ruling on a matter of evidence, not its ruling on a constitutional question. It follows that Luce, and not Portash, controls. See United States v. Hall, 312 F.3d 1250, 1258 n.9 (11th Cir. 2002) (declining to review a pretrial evidentiary ruling where the defendant did not testify and distinguishing Portash because it "involve[d] state court rulings directly about the nature and extent of a defendant's constitutional rights under the Fifth Amendment," not an evidentiary ruling); cf. Idlett v. Andrews, 150 F. App'x 74, 76 (2d Cir. 2005) (summary order) (citing Luce in a habeas case and suggesting that a Sandoval ruling "d[id] not present a question of constitutional dimension" where the defendant testified and the state court ruled that the prosecution could cross-examine the defendant about evidence that she lied to the police in connection with an earlier matter); Biller v. Lopes, 834 F.2d 41, 44 (2d Cir. 1987) (stating that where, unlike here, a pretrial ruling "depends on legal and not factual considerations, the requirement that the defendant actually testify at trial to preserve the admissibility issue for appeal might not necessarily be appropriate").

Therefore, the Sandoval ruling in this case is not cognizable on habeas corpus review. Petitioner's point of error is rejected.

## II.     The Ineffective Assistance of Counsel Claim

On direct appeal, petitioner had a point heading in his brief alleging that the "cumulative" errors and omissions of trial counsel violated his Sixth Amendment right to effective assistance of counsel. However, the brief point consisted entirely of boilerplate legal citations with no reference to any, let alone cumulative, errors or omissions except for one sentence alleging one strategic error: "What could be more prejudicial than foolishly and ignorantly conceding the prosecution's main argument as in saying that the defendant was under the influence when committed the murder [sic] when there was no intoxication charge"? The Appellate Division

6

generally referenced this contention as one of petitioner's "remaining arguments," which it found to be "without merit." Magnan, 173 A.D.3d at 1217, 104 N.Y.S.3d at 161.

Petitioner seeks to reprise and slightly expand on his ineffective assistance argument in his habeas corpus petition. Filling it out a bit, he contends that his primary defense was identification – *i.e.*, that he was not the person that committed the robberies and murder. As a fallback position, petitioner points out, his trial counsel requested that the trial court give the jury an "intoxication" charge as a means of negating his intent to kill and avoiding the intentional murder count. However, when the trial court ruled that there was insufficient evidence to give the jury an instruction as to intoxication, trial counsel, after arguing the identification defense to the jury, nevertheless proceeded to argue intoxication as an alternative. This, petitioner argues, constituted ineffective assistance because it contradicted the identification defense. In other words, petitioner argues, if petitioner was not the assailant, as was his primary argument, then to argue intoxication was to admit that he *was* the assailant, thus refuting his own identification defense.

To be successful, petitioner has to meet the familiar two-prong test of Strickland v. Washington, 466 U.S. 668 (1984). He must first show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. The Court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (citation and internal quotation marks omitted). Second, under the "prejudice" prong, petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial,

7

not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011). Moreover, as the Second Circuit has noted, "[t]he prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence." Garner v. Lee, 908 F.3d 845, 862 (2d Cir. 2018).

Because the Appellate Division rejected petitioner's claim on the merits, his task before me is doubly difficult. His ineffective assistance claim must be viewed through the prism of AEDPA's narrow review standard. AEDPA permits relief only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405 (2000) (quotation omitted). A decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (citation and internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Since Harrington, the Supreme Court has repeatedly admonished circuit courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 577 U.S. 73, 76–

8

77 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013))).

Petitioner comes nowhere near to clearing this double hurdle. To put his ineffective assistance claim in context, it is important to note that his trial counsel had no good options. The identification defense was itself very, very weak. I have described the facts in the preceding point and will therefore not repeat them – it suffices to note that there was overwhelming eyewitness and forensic evidence against him. In other words, it was not as if the identification defense had a good chance of success and the alternative intoxication argument eclipsed it. Rather, trial counsel had no good choices.

Trial counsel therefore followed a time-honored strategy of trying to get petitioner out of the charges but if that could not be done, then to get him out of the intentional murder count. Counsel did what he could to point to some indefinite aspects of the identification and then urged the jury that, even if they found petitioner was the shooter, there were facts in the record suggesting that he was too intoxicated to have intentionally committed the murder. That strategy was not only well within trial counsel's discretion to make strategic choices, but it is very likely the best choice out of the poor choices that he had.

Petitioner makes much of the fact that the trial court had declined to give an intoxication charge. A contrary ruling certainly would have been advantageous to petitioner's intoxication argument. However, the trial court did not preclude trial counsel from making the argument. The fact that the trial court did not buy it did not preclude the jury from accepting it and reaching a compromise to let petitioner off the murder count. Again, trial counsel was well within his

9

strategic discretion to give it a try, given the paucity of available avenues of defense. Finally, it must be noted that the "inconsistency" about which petitioner complains would obtain whether or not the trial court had given the intoxication instruction.

For present purposes, however, all that matters is that there was nothing objectively unreasonable in trial counsel's reasoned strategy, nor, in light of the infirmity of the identification defense, was petitioner prejudiced by the effort. Even more importantly, petitioner has not and cannot point to any Supreme Court decision that is contrary to the Appellate Division's decision or that the Appellate Division applied unreasonably.

Petitioner's point of error is therefore rejected.

## CONCLUSION

The petition is denied and the case is dismissed. A certificate of appealability shall not issue as the petition raises no substantial constitutional issue. See 28 U.S.C. § 2253(c)(2). Further, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
April 21, 2021